UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

THE ESTATE OF CHRISTOPHER A. CHAMPINE
BY SPECIAL ADMINISTRATOR RICHARD COAD,

    *Plaintiff,*

    *v.*                                                                      Case No: 1:23-cv-1392

BROWN COUNTY AND
WELLPATH, LLC (F/K/A CORRECT CARE SOLUTIONS, LLC),

    *Defendants.*

**COMPLAINT**

The Estate of Christopher A. Champine, by its attorneys, Strang Bradley, LLC, for its complaint against Defendants, states:

**INTRODUCTION**

1. This is a civil rights action brought by the Estate of Christopher A. Champine for damages under 42 U.S.C. § 1983. Christopher A. Champine (Christopher"), died on December 16, 2017, as a result of injuries from hanging himself while being held in custody at the Brown County Jail in Brown County, Wisconsin.

2. In 2016 and 2017, the Brown County Jail repeatedly failed to conduct medical and mental health evaluations of incoming inmates within 14 days as required by Wisconsin law, categorically cut off inmates from their prescription psychotropic medications cold turkey upon being booked into the Brown County Jail, repeatedly failed to take any action when inmates were identified as the highest possible suicide risk

1

classification based on the Brown County Jail suicide risk assessment, and repeatedly failed to remove the shower curtain rods from the inmate showers despite four separate inmates dying from hanging themselves from the shower curtain rods within an 18 month period.

3. Captain Larry Malcomson, the Jail Administrator for the Brown County Jail in 2016 and 2017, as well as other senior staff at the jail, were aware that the above failures were causing inmates in the Brown County Jail to die and they failed to correct any of the above-identified failures.

4. Jessica Jones, the director of nursing for Wellpath at the Brown County Jail in 2016 and 2017, as well as other senior staff at Wellpath, were aware that the above failures were causing inmates in the Brown County Jail to die and they failed to correct any of the above-identified failures.

5. This lawsuit seeks to establish that it is a violation of Christopher's constitutional rights for Brown County Jail Staff to repeatedly fail to conduct medical and mental health evaluations of incoming inmates within 14 days as required by Wisconsin law, categorically cut off inmates from their prescription psychotropic medications cold turkey upon being booked into the Brown County Jail, repeatedly fail to take any action when inmates were identified as the highest possible suicide risk classification based on the Brown County Jail suicide risk assessment, and repeatedly fail to remove the shower curtain rods from the inmate showers despite four separate inmates dying from hanging themselves from the shower curtain rods within an 18 month period. It seeks to ensure that Brown County Jail and Wellpath staff don't continue to fail to address the above problems so that a person who is suffering from a suicidal mental health crisis while in the custody

of the Brown County Jail receives at least the minimum constitutionally required care instead of being repeatedly ignored, denied prescription medication, denied proper mental health treatment, and left alone unmonitored to commit suicide.

## JURISDICTION AND VENUE

6. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Christopher Champine's rights as secured by the United States Constitution.

7. This Court has jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and the state law claims for indemnification pursuant to 28 U.S.C. § 1367.

8. Venue is proper under 28 U.S.C. § 1391(b). Defendant Brown County is a political subdivision of the state of Wisconsin located within this judicial district. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

## PARTIES

9. The Plaintiff, the Estate of Christopher A. Champine, is a legal entity with the capacity to sue and be sued.

10. Richard Coad is the duly appointed Special Administrator of the Estate of Christopher A. Champine.

11. Defendant Brown County is a political subdivision of the state of Wisconsin with a mailing address of 305 E. Walnut Street, Room #120, Green Bay, WI 54301. Pursuant to Wis. Stat. § 59.01, Brown County is authorized, inter alia, to sue and be sued. Brown County is a "person" for purposes of 42 U.S.C. § 1983. Brown County owns and operates

the Brown County Jail. Acting through the Brown County Sheriff's Office, the County is responsible for training, supervising, and disciplining jail employees and contract staff working within the jail. Brown County is also responsible for adopting, implementing, and enforcing jail policies and practices, and ensuring that jail conditions and the medical treatment of detainees comply with the United States Constitution and other federal and state laws. Pursuant to Wis. Stat. § 59.27(1), Brown County acting through its Sheriff in his official capacity, cannot delegate away its constitutional duties regarding medical care for detainees. The County is liable for the jail policies, practices, and customs that caused the harm alleged, infra.

12. Defendant Wellpath, LLC ("Wellpath"), f/k/a Correct Care Solutions, is a foreign for-profit corporation incorporated under the laws of the State of Delaware, doing business in the State of Wisconsin. Wellpath's principal office is located at 1283 Murfreesboro Road, Suite 500, Nashville, Tennessee 37217, and its Registered Agent is Corporate Creations Network, Inc., 4650 West Spencer Street, Appleton, Wisconsin 54914. As is relevant herein, Wellpath is a "person" for purposes of 42 U.S.C. § 1983. Following the incidents described herein, Correct Care Solutions ("CCS") changed its name to Wellpath. Upon information and belief, Wellpath is responsible for the assets and liabilities of CCS. CCS's acts and omissions at the Brown County Jail, including the acts and omissions of its employees and agents, were conducted under color of state law. Wellpath is legally liable for all CCS policies and practices referenced herein and for the acts and omissions of its employees, agents, and independent contractors, whether located at the Brown County Jail or elsewhere.

## FACTS

13. Plaintiff realleges the above paragraphs.

14. In 2016 and 2017, the Brown County Jail contracted with a private for-profit correctional healthcare company called Correct Care Solutions, LLC, which was subsequently renamed Wellpath, LLC, to provide medical and mental health care to inmates in the Brown County Jail.

15. The Brown County Jail took Christopher into legal and physical custody as a pre-trial detainee, thereby establishing a special custodial and supervisory relationship toward him by Brown County to provide necessary medical care. Brown County contractually delegated and shared this duty with Wellpath. This special custodial and supervisory relationship consequently gave rise to affirmative contractual legal duties by Wellpath and its employees, agents, and contractors to secure Christopher's liberty interests and rights, including his physical safety, essential medical care and treatment, and his right to be free from unnecessary pain and suffering, substantive rights protected by the Fourteenth and Eighth Amendments to the U.S. Constitution – rights which Brown County and Wellpath violated.

16. In 2016 and 2017, Wellpath categorically cut off inmates from their prescription psychotropic medications cold turkey upon being booked into the Brown County Jail, and even when the inmates themselves or their family members brought their prescription psychotropic medications to the jail, Wellpath refused to allow the inmates to take their prescription psychotropic medications.

17. In 2016 and 2017, Wellpath categorically failed to complete initial Medical History and Health Assessments of inmates within 14 days of their booking into the Brown County Jail as required by Wisconsin Administrative Code 350.13(5).

18. Captain Larry Malcomson, the Jail Administrator for the Brown County Jail in 2016 and 2017, as well as other senior staff at the jail, were aware that inmates who were currently taking prescription psychotropic medication to treat their mental health problems at the time they booked into the jail, were categorically being denied their prescription psychotropic medications and cut off their psychotropic medications cold turkey.

19. Captain Larry Malcomson, the Jail Administrator for the Brown County Jail in 2016 and 2017, as well as other senior staff at the jail, were aware Wellpath categorically failed to complete initial Medical History and Health Assessments of inmates within 14 days of their booking into the Brown County Jail as required by Wisconsin Administrative Code 350.13(5).

20. Captain Larry Malcomson, the Jail Administrator for the Brown County Jail in 2016 and 2017, as well as other senior staff at the jail, were aware that inmates at the jail were repeatedly dying from hanging themselves from the shower curtain rods.

*Tonya Mealman Died from Hanging Herself from The Shower Curtain Rod In 2016*

21. On July 18, 2016, Tonya K. Mealman died from hanging herself from the shower curtain rod while in custody at the Brown County Jail.

22. Tonya Mealman had previously attempted to hang herself from the shower curtain rod while in custody at the Brown County Jail, but the two socks that she tied

6

together and used to hang herself from the shower curtain rod broke and she fell and cut her head on the floor. She was found "lying in a large puddle of blood and moaning loudly" and taken by ambulance to the hospital to get her head stapled back together.

23. When Tonya was booked into the jail, on June 27, 2016, the Brown County Jail suicide risk assessment identified her as the highest possible suicide risk classification. She reported she had attempted suicide before, was being treated for her mental health, and was currently taking psychotropic prescription medications for depression and bi-polar disorder.

24. The day after Tonya was booked into the jail, her family dropped off her psychotropic prescription medication, but the jail medical staff refused to give any of her medications to her.

25. Other inmates at the Brown County Jail told jail and medical staff that Tonya was sick and not eating, that that Tonya had been making herself throw up and needed help, that they thought that Tonya was suicidal, that Tonya needed her medication, and that Tonya said that she was thinking of killing herself.

26. The Brown County Jail staff, including the medical staff, both ignored Tonya's calls for help and her fellow inmates' calls to help Tonya.

27. In the weeks before her death, Tonya had been asking for the medication she had been prescribed before she was booked into the jail, and she wrote notes to jail and/or medical staff asking for her medication and saying that she needed to see psychiatric doctor ASAP, however the staff at the jail didn't follow up on her request for weeks.

28. After Tonya's suicide the Brown County Jail conducted a Mortality Review (an interdisciplinary committee process comprised of correctional, medical and mental health personnel that examines the events surrounding the death to determine if the incident was preventable and to make recommendations aimed at reducing the opportunity of future deaths). During the Mortality Review Atalie Przybelski recommended that the shower curtain rods be removed so that individuals could not hang themselves from the shower curtain rods.

29. The Brown County Jail administration did nothing to change the shower curtain rods after Tonya Mealman was found hanging from the shower curtain rod in 2016. As a result of leaving the current shower curtain rods in place, Eric Thompson was able to hang himself from the shower curtain rod in 2016, Michael Boncher was able to hang himself from the shower curtain rod in 2017 and Christopher Champine was able to hang himself from the shower curtain rod in 2017.

*Eric Thompson Died from Hanging Himself from The Shower Curtain Rod In 2016*

30. On December 12, 2016, Eric A. Thompson died from hanging himself from the shower curtain rod while in custody at the Brown County Jail.

31. When Eric was booked into the jail, on December 7, 2016, the Brown County Jail suicide risk assessment identified him as the highest possible suicide risk classification. He threatened to kill himself while he was being transported to the jail and when he arrived at the jail for the booking process, it was noted that he had staples in his leg from a recent suicide attempt by using a knife approximately one week earlier. He reported to the

booking officer that he was being treated for his mental health, and was taking psychotropic prescription medications for depression, and anxiety.

32. Wellpath did not give Michael any of his prescription psychotropic medications that he was taking for his depression and anxiety.

33. After Eric's suicide, the Brown County Jail conducted a Mortality Review (an interdisciplinary committee process comprised of correctional, medical and mental health personnel that examines the events surrounding the death to determine if the incident was preventable and to make recommendations aimed at reducing the opportunity of future deaths). The Mortality Review only had one recommendation to prevent future suicides: "removing shower curtain rods."

34. Also during the Mortality Review of Eric Thompson, Atalie Przybelski again renewed her same recommendation from Tonya Mealman's Mortality Review—that the shower curtain rods be removed so that individuals could not hang themselves from the shower curtain rods.

35. After Eric's suicide, the Wisconsin Department of Corrections Office of Detention Facilities conducted an Administrative Review of the Brown County Jail and made a written recommendation to the jail that "Administration should review the shower areas of the facility and consider removal of the current bars and replace with curtains that will not support weight and do not obstruct a full view into the shower area so that feet can be observed."

36. After Eric's suicide, on June 22, 2017, in a meeting among Wellpath staff members Jessica Jones and Atalie Przybelski and Brown County Jail staff members Lt. John

Mitchell, Lt. Scott Brisbane, Cpl. Brian Laurent, Capt. Larry Malcomson, and Jean Short, the issue of the shower curtain rods needing to be replaced to prevent future suicides was again discussed with the following notation in the meeting minutes "[b]eing researched for ideas of purchase."

37. The Brown County Jail administration did nothing to change the shower curtain rods after Tonya Mealman was found hanging from the shower curtain rod in 2016, or after Eric Thompson was found hanging from the shower curtain rod in 2016. As a result of leaving the current shower curtain rods in place, Michael Boncher was able to hang himself from the shower curtain rod in 2017 and Christopher Champine was able to hang himself from the shower curtain rod in 2017.

*Michael Boncher Died from Hanging Himself from The Shower Curtain Rod In 2017*

38. On October 20, 2017, Michael T. Boncher died from hanging himself from the shower curtain rod while in custody at the Brown County Jail.

39. Michael was a pre-trial detainee at the jail and was being held at the jail because he could not afford to pay a $10,000 cash bond to be released.

40. When Michael was booked into the jail, on October 15, 2017, the Brown County Jail suicide risk assessment identified him as the highest possible suicide risk classification. He reported to the booking officer that he was being treated for his mental health, and was taking psychotropic prescription medications for depression, bipolar disorder, and anxiety.

41. Wellpath did not give Michael any of his prescription psychotropic medications that he was taking for his depression, bipolar disorder, and anxiety.

42. Like Tonya Mealman, Michael had previously attempted to commit suicide by hanging himself while he was in the Brown County Jail.

*Christopher Champine Died from Hanging Himself from The Shower Curtain Rod In 2017*

43. On December 16, 2017, Christopher A. Champine died from hanging himself from the shower curtain rod while in custody at the Brown County Jail.

44. Christopher was a pre-trial detainee at the jail and was being held at the jail on behalf of the U.S. Marshalls.

45. When Christopher was booked into the jail, in June of 2017, he reported to the booking officer that he was being treated for his mental health and was taking psychotropic prescription medications for bipolar disorder and PTSD.

46. Wellpath did not give Christopher any of his prescription psychotropic medications that he was taking for his bipolar disorder and PTSD.

47. On November 17, 2017, Mike Pickett sent an email to Scott Brisbane and Larry Malcomson, the Jail Administrator for the Brown County Jail in 2016 and 2017. In that email, Mike Pickett wrote, "It has come to my attention from Tom Hermes that shower curtain modification has become a high priority in the direct supervision pods since the suicide incident. … The cost of the complete setup from Grainger for one shower is $150.79 which includes the vented curtain Grainger number 36FW89, Four hanger straps Grainger 36FX13, and the track Grainger 36FX06."

48. The Brown County Jail administration did not remove the shower curtain rods after Tonya Mealman was found hanging from the shower curtain rod in 2016, or after

Eric Thompson was found hanging from the shower curtain rod in 2016, or after Michael Boncher was found hanging from the shower curtain rod in 2017. As a result of leaving the current shower curtain rods in place, Christopher Champine was able to hang himself from the shower curtain rod in December 2017.

**COUNT 1:**

**42 U.S.C. § 1983 *Monell*[1] claim against Defendant Brown County and Wellpath**

49. Plaintiff realleges the above paragraphs.

50. Defendant Brown County and Wellpath authorized, tolerated, ratified, permitted, or acquiesced in policies, practices, and customs, oral and written, pronounced, and *de facto*, including detainee medical decisions made irrespective of appropriate medical judgment, which were objectively unreasonable and exhibited substantial departure from accepted professional judgment, practices, and/or standards, and which were also deliberately indifferent to the safety and suffering of detainees with serious medical conditions, including Christopher Champine in violation of his rights protected by the Fourteenth Amendment to the United States Constitution. These policies, practices, and customs were the moving force which caused the deprivation of Plaintiff's constitutional rights.

51. Defendant Brown County and Wellpath knew that their policy, custom, or practice of categorically cutting off inmates from their prescription psychotropic medications cold turkey when they booked into the Brown County Jail and without

---

[1] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

providing them with any alternative medication or mental health treatment resulted in unnecessary pain, suffering and death of inmates at the Brown County Jail.

52. Defendant Brown County and Wellpath knew that their policy, custom, or practice of categorically failing to complete initial Medical History and Health Assessments of inmates within 14 days of their booking into the Brown County Jail as required by Wisconsin Administrative Code 350.13(5), resulted in unnecessary pain, suffering and death of inmates at the Brown County Jail.

53. Defendant Brown County and Wellpath failed to adequately train and supervise their employees.

54. Defendant Brown County and Wellpath's policies, customs, practices, training, and supervision of employees, or lack thereof was a direct cause or moving force that caused the deprivation of Plaintiff's constitutional rights.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff demands actual or compensatory damages against Defendant Brown County and Wellpath, plus the costs of this action, attorneys' fees, and such other and further relief that the Court deems just and equitable.

## JURY DEMAND

55. Plaintiff hereby demands a trial by jury, pursuant to FED. R. CIV. PRO. 38(b), on all issues so triable.

Dated: 17 October 2023,

Respectfully submitted,

/s/ John H. Bradley
John H. Bradley
   Wisconsin Bar No. 1053124
R. Rick Resch
   Wisconsin Bar No. 1117722
James Odell
   Wisconsin Bar No. 1131587
STRANG BRADLEY, LLC
613 Williamson Street, Suite 204
Madison, Wisconsin 53703
(608) 535-1550
John@StrangBradley.com
Rick@StrangBradley.com
James@StrangBradley.com

Attorneys for Plaintiff